1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9

10   JOSHUA MAYNARD,                           Case No. 21-cv-04519-JSW

                    Plaintiff,
11
                                               **ORDER GRANTING DEFENDANT'S**
          v.                                   **MOTION FOR SUMMARY**
12                                             **JUDGMENT**

13   UNITED SERVICES AUTOMOBILE                Re: Dkt. No. 71
     ASSOCIATION FEDERAL SAVINGS
14   BANK,

                    Defendant.
15

16        Now before the Court is the motion for summary judgment filed by Defendant USAA

17   Federal Savings Bank ("Defendant").  Defendant moves for summary judgment on its

18   counterclaims for breach of contract and declaratory judgment as well as on the second amended

19   complaint filed by Plaintiff Joshua Maynard ("Plaintiff").  The Court has considered the parties'

20   briefs and relevant legal authority, and it finds the matter suitable for disposition without oral

21   argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court HEREBY GRANTS

22   Defendant's motion for summary judgment.

23                                   **BACKGROUND**

24        This case arises from the repossession of Plaintiff's 2014 Dodge Durango.  Plaintiff,

25   proceeding pro se, has alleged five causes of action: (1) negligence; (2) negligent

26   misrepresentation; (3) conversion, (4) violations of the Fair Debt Collections Practices Act, 15

27   U.S.C. section 1692, *et seq.*; and (5) violations of the California Rosenthal Act, California Civil

28   Code section 1788, *et seq.*  (Dkt. No. 58, Second Amended Complaint ("SAC").)

United States District Court
Northern District of California

United States District Court
Northern District of California

1         The chronology of facts is undisputed.  In August 2014, Plaintiff obtained an auto loan

2    from Defendant to purchase a brand new 2014 Dodge Durango ("Durango").  The following year,

3    on June 15, 2015, Plaintiff refinanced the loan and entered into an agreement granting Defendant a

4    lien on the Durango.  Under the agreement, Plaintiff agreed to "keep the [Durango] in good repair

5    and use it only for personal, family, or household purposes."  In August 2019, Plaintiff began to

6    use the Durango for business to perform DoorDash deliveries.  Eventually, Plaintiff fell behind on

7    loan payments to Defendant.  On October 27, 2019, the loan reached 120 days past due with an

8    outstanding balance of $27,644.02.  On October 2, 2019, Plaintiff filed for Chapter 7 bankruptcy.

9    In his "Statement of Intention" filed in bankruptcy court, Plaintiff indicated that he would retain

10   the Durango and "[a]gree to new terms for payment" with Defendant.  Although Plaintiff

11   attempted to secure a revised loan agreement and new terms for payment, he was unsuccessful in

12   his negotiations with Defendant.

13        On January 15, 2020, Plaintiff received a Notice of Intent to Repossess the Durango from

14   Defendant.  After a review of the lien, Defendant assigned the repossession to Daybreak Auto

15   Recovery, Inc. ("Daybreak") on January 30, 2020.  On February 10, 2020, while Plaintiff was out

16   car shopping, repossession agents sent by Daybreak visited Plaintiff's home seeking to repossess

17   the Durango.  As Plaintiff was out with the Durango, the agents were not able to effectuate the

18   repossession at his home.  Instead, they left a contact card with Plaintiff's son in contravention of

19   the written instructions prohibiting the agents from knocking on doors or leaving contact cards.

20   After hearing about the attempted repossession, Plaintiff called Defendant in an effort to

21   renegotiate the terms of the loan.  This attempt at negotiation failed and was not engaged further.

22        On February 11, 2020, Plaintiff surrendered the Durango by abandoning it at the parking

23   lot of an Extended Stay America hotel located at 799 Orange Drive, in Vacaville, California.  He

24   then walked to a car dealership to pick up a used 2018 Hyundai Tucson.  According to Daybreak's

25   records, Plaintiff called Daybreak and informed them that he had left the Durango parked at the

26   Extended Stay parking lot with the keys in the glovebox and the passenger-side door unlocked.

27   Plaintiff also removed the license plates from the Durango, apparently under the mistaken belief

28   that he could re-use the plates after registering his new car.

2

1          After receiving the call from Plaintiff on February 11, 2020, Daybreak immediately

2   requested a dual assignment of the repossession order because the location of the Durango, 50

3   miles from Plaintiff's home, was outside of its service area.  The dual assignment was received by

4   After Hours Recovery, Inc. ("After Hours") on February 18, 2020.  On February 24, 2020, agents

5   sent by After Hours searched the Extended Stay parking lot but reported that there were unable to

6   locate the vehicle.

7          On March 17, 2020, Defendant issued a voluntary moratorium on all vehicle repossessions

8   in response to the COVID-19 pandemic.

9          Although Plaintiff believed Daybreak would pick up the Durango the day following his

10  abandonment of the vehicle, in fact the Durango remained on the Extended Stay lot for three

11  months before being towed by X-Men Towing on May 7, 2020, at Extended Stay's request.  In

12  mid-May 2020, due to his being the previously registered owner of the Durango, Plaintiff received

13  a notice of pending lien sale in the mail from X-Men Towing.  The notice of the pending lien sale

14  was dated May 14, 2020, listed Plaintiff as the registered owner of the vehicle and Defendant as

15  the legal owner, and was sent to both parties.  The lien sale notice required a 30-day waiting

16  period for the sale.

17         On May 19, 2020, Defendant received the notice of the pending lien sale but the notice was

18  incorrectly routed within the company to the wrong group.  Consequently, it was not acted upon.

19  Unbeknownst to Defendant, on June 15, 2020, X-Men Towing called Plaintiff to see if he wanted

20  to purchase the Durango.  On June 16, 2020, X-Men Towing sold the Durango back to Plaintiff

21  for $1,100.00 in a lien sale.  Based on X-Men Towing's representations, Defendant had already

22  been informed of the pending lien sale and Plaintiff believed they had chosen not to participate.

23  Plaintiff was unaware that the notice had been rerouted to the wrong group within Defendant.

24         At the time of the lien sale, the Durango was inoperable and had to be towed.  Plaintiff

25  invested money to get it operating, inspected, titled, and registered.  After several months, by

26  August 10, 2020, Plaintiff had the Durango up and running and registered with new plates and title

27  in his name.

28

*United States District Court*
*Northern District of California*

3

United States District Court
Northern District of California

1    On October 2, 2020, Defendant lifted its voluntary moratorium on vehicle repossessions.

2    On November 29, 2020, Defendant issued an Order to Repossess the Durango.  On November 30,

3    2020, After Hours Recovery Inc. ("After Hours"), hired by Defendant, repossessed the Durango

4    from Plaintiff's driveway at his home.  Plaintiff contacted both Defendant and After Hours to

5    explain the situation and was informed that he could only recover the vehicle if he paid the

6    $27,644.02 outstanding on his prior loan with Defendant.  On December 1, 2020, Defendant

7    mailed a Letter of Intent indicating they had taken possession of the Durango and were willing to

8    return it with payment of the $27,644.02.  Also on December 1, 2020, Plaintiff appeared in person

9    at After Hours to demand return of the car and the personal property contained in it.  After Hours

10   did not return the vehicle but did return a few items from within it with an inventory of personal

11   effects.  Plaintiff called the Vallejo Police who appeared in person at After Hours to assist.  Upon

12   presenting his title and lien sale purchase documents, After Hours agreed to return the Durango to

13   Plaintiff the following day.  On December 2, 2020, Plaintiff returned in person to After Hours to

14   retrieve the Durango.  While driving it back home, Plaintiff noticed additional personal items in

15   the car as well as several defects in operating the car, including an inoperable cruise control, all

16   wheel drive service light, and the steering wheel pulling to the right.  At that time, Plaintiff did not

17   have money to invest in fixing the Durango, so it sat unusable in his driveway from December 2,

18   2020, until June 16, 2021, after he had invested in repairs.

19   On May 5, 2021, Plaintiff filed a pro se complaint against Defendant in the Superior Court

20   of the County of Sonoma.  On June 11, 2021, Defendant removed the action to federal court on the

21   basis of diversity jurisdiction.  After a number of motions on the pleadings, Defendant filed the

22   instant motion for summary judgment.

23   The Court shall address other relevant facts in the remainder of its order.

24                                              **ANALYSIS**

25   **A.    Legal Standard on Motion for Summary Judgment.**

26   Summary judgment is proper where the pleadings, discovery and affidavits show that there

27   is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

28   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

4

1    the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material

2    fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

3    nonmoving party.

4        The party moving for summary judgment bears the initial burden of identifying those

5    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

6    issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving

7    party has met this burden of production, the nonmoving party must go beyond the pleadings and,

8    by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for

9    trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material

10   fact, the moving party wins. *Id.*

11       At summary judgment, the judge must view the evidence in the light most favorable to the

12   nonmoving party: if evidence produced by the moving party conflicts with evidence produced by

13   the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving

14   party with respect to that fact. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

15   **B.    Claim for Conversion.**

16       Plaintiff alleges that Defendant became liable for conversion once After Hours repossessed

17   the Durango on November 29, 2020. Under California law, "[c]onversion is the wrongful exercise

18   of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). The

19   elements of the cause of action for conversion are: "(1) the plaintiff's ownership or right to

20   possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

21   property rights; and (3) damages." *Id.* To maintain a claim for conversion, the alleged conduct by

22   defendant must have been "wrongful." *Duke v. Superior Court*, 18 Cal. App. 5th 490, 508 (2017).

23   Also, the "plaintiff must establish an actual interference with his ownership or right of

24   possession." *Moore v. Regents of the Univ. of Cal.*, 41 Cal. 3d 120, 136 (1990). "Where plaintiff

25   neither has title to the property alleged to have been converted, nor possession thereof, he cannot

26   maintain an action for conversion." *Id.*

27       Here, although admittedly delayed and after a number of false starts, the authorized

28   repossession of Defendant's valid security interest constitutes an authorized repossession and

United States District Court
Northern District of California

United States District Court
Northern District of California

1    cannot be deemed wrongful.  Further, as the lien on the vehicle remained under the bankruptcy

2    order, Defendant did not lose dominion over their collateral.  The unfortunate series of events –

3    deposit of the Durango 50 miles from Plaintiff's residence and left without identifying license

4    plates, coupled with the interim moratorium on repossession efforts and the error in routing the

5    notice of impending lien sale within Defendant's office – derailed Defendant's legitimate efforts

6    to recoup their collateral.  As both Plaintiff and Defendant agree, the vehicle was recoverable at

7    the time Plaintiff attempted to make it available for repossession.  The lien on the vehicle was

8    never extinguished, either by the bankruptcy proceedings or by the sale of the car from X-Men

9    Towing to Plaintiff after its abandonment on the Extended America parking lot.

10         Because Plaintiff cannot demonstrate, with the all facts viewed in his favor, that the vehicle

11    was unencumbered when he purchased it from X-Men and cannot establish that Defendant's

12    attempt at repossession is wrongful, Plaintiff cannot prevail on his claim for conversion.  Because

13    the claim for conversion was the only basis upon which Plaintiff could legitimately recover

14    emotional distress damages, the Court also finds this claim for damages extinguished.

15    Accordingly, the Court GRANTS summary judgment as to Plaintiff's claim for conversion.

16    **C.    Claim for Negligence.**

17         Plaintiff alleges that Defendant negligently failed to verify its lien on the Durango at the

18    time it ordered the vehicle to be repossessed.  However, the undisputed evidence establishes that

19    Defendant verified its lien on the Durango on January 29, 2020, and that Daybreak was called

20    upon to effectuate the repossession on January 30, 2020.  After Plaintiff left the Durango at the

21    Extended Stay parking lot on February 11, 2020, Defendant's agents made a good faith effort to

22    locate the vehicle, but claimed they were unable to identify the vehicle because the license plates

23    had been removed by Plaintiff.  Whether willful or not, the removal of the license plates frustrated

24    the identification and retrieval of the vehicle by Defendant and its agents.  Although there was a

25    delay between February to November 2020 because of this frustration in finding the vehicle and

26    because of the voluntary suspension of repossession efforts during the height of the COVID-19

27    pandemic, the basis and authority upon which Defendant was entitled to repossession did not

28    change in the interim months.

United States District Court
Northern District of California

1    A claim for negligence requires the establishment of (a) a legal duty to use care; (b) breach

2    of that duty; and (c) that breach was the proximate or legal cause of the resulting injury.  *See Ladd*

3    *v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).  Plaintiff has not established nor does the

4    Court recognize any special relationship between Defendant and Plaintiff.  There are no duties that

5    Defendant failed to fulfill.  Under California law, "lenders do not owe a fiduciary duty to

6    borrowers."  *Taguinod v. World Savings Bank, FSB*, 755 F. Supp. 2d 1064, 1073 (C.D. Cal. 2010).

7    Further, the damages Plaintiff sustained do not appear to be caused by any breach of duty by

8    Defendant.  Accordingly, the Court GRANTS summary judgment as to Plaintiff's claim for

9    negligence.

10   **D.    Claim for Negligent Misrepresentation.**

11   A claim for negligent misrepresentation requires "an assertion of fact, falsity of that

12   assertion, and the tortfeasor's lack of reasonable grounds for believing the assertion to be true."  *SI*

13   *59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 154 (2018).  Plaintiff bases his

14   claim for negligent misrepresentation on the allegation that Defendant's representations of having

15   a "current lien in the Durango during the course of [its] repossession and even in the course of

16   being confronted by [its] misrepresentation" was false and without reasonable basis.  (SAC at ¶¶

17   56-57.)  However, the Court finds that Defendant had and maintains a security interest in the

18   Durango as collateral for the loan that was continuously valid from the time the loan agreement

19   was entered.  The Court finds that because the negligent misrepresentation claim is based on a true

20   statement, the claim necessarily fails.  Accordingly, the Court GRANTS summary judgment as to

21   Plaintiff's claim for negligent misrepresentation.

22   **E.    Claim for Violation of the FDCPA.**

23   Plaintiff seeks to assert claims for violation of the Fair Debt Collection Practices Act

24   ("FDCPA"), particularly under provisions 15 U.S.C. sections 1692e and 1692f.  Section 1692e

25   provides that "[a] debt collector may not use any false, deceptive, or misleading representation or

26   means in connection with the collection of any debt."  Section 1692f provides that "[a] debt

27   collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

28   Plaintiff alleges that Defendant violated these provisions of the FDCPA by falsely representing

1   that it held a lien on the Durango and by falsely representing that it was entitled to sell the

2   Durango.  (SAC at ¶ 77.)

3        The Court finds that the representations made by Defendants regarding its security interest

4   in the vehicle were not false or misleading.  There is no evidence before the Court that Defendant

5   used "any false, deceptive, or misleading representation of means in connection with the collection

6   of nay debt" in this matter.  Further, the Court, having reviewed all of the evidence presented, does

7   not find that Defendant used any unfair or unconscionable means to collect on the debt.  Rather,

8   although delayed and having missed notice of the impending lien sale by misdirection of the mail

9   from X-Men Towing, Defendant was merely seeking to recover the collateral on their valid loan to

10  Plaintiff.  The Court finds the circumstances of this collection of debt to be unfortunate and

11  delayed, but it does not find that the collection was made in any false, deceptive, or misleading

12  manner.  Accordingly, the Court GRANTS summary judgment as to Plaintiff's claim for violation

13  of the FDCPA.

14  **F.      Claim for Violation of the Rosenthal Act.**

15       Plaintiff alleges one claim for violation of the Rosenthal Act, by stating that "[b]y

16  Violating the FDCPA, [… Defendant] has also necessarily violated the Rosenthal Act via Cal.

17  Civ. Code § 1788.17, as the Rosenthal Act has incorporated each of these provisions of the

18  FDCPA."  (SAC at ¶ 79.)  Because the claim under the FDCPA fails and there is not alleged

19  independent violation, the claim for the Rosenthal Act claim fails as well.  Accordingly, the Court

20  GRANTS summary judgment as to Plaintiff's claim for violation of the Rosenthal Act.

21  **G.      Defendant is Entitled to Judgment on its Counterclaim for Breach of Contract.**

22       The undisputed facts establish that Plaintiff was in breach of his contract with Defendant.

23  Plaintiff admits that he drove the car for DoorDash although the contract with Defendant indicated

24  that it was only to be used for personal, family, or household purposes.  Plaintiff also admits that

25  he defaulted on the loan and retained the vehicle only on the condition that he was able to

26  renegotiate new loan terms with Defendant.  Although his default on the loan was discharged in

27  bankruptcy, Plaintiff did not secure new loan terms as he had indicated on his statement of

28  intention.  A debtor must file a statement of intention indicting whether he intends to surrender or

United States District Court
Northern District of California

8

1   retain property and must file and perform on his written intentions within a certain time frame.

2   *See* 11 U.S.C. § 521(a)(2)(A).  If a debtor fails to meet these obligations, the property is removed

3   from the estate.  *See* 11 U.S.C. §§ 521(a)(2)(C), 362(h)(1), 362(h)(2); *see also In re Failla*, 838

4   F.3d 1170, 1175 (11th Cir. 2016) ("Subsection (A) [of 11 U.S.C. § 521(a)(2)] requires the debtor

5   to file a statement of intention about what he plans to do with the collateral for his debts …. After

6   the debtor issues his statement of intention, subsection (B) requires him to perform the option he

7   declared.").

8          Plaintiff also admits that, absent a successful negotiation of new terms on the loan, he was

9   obligated to return the collateral on the discharged loan.  Defendant's interest in the Durango was

10  unaffected by the bankruptcy and the loan agreement remained enforceable.  In fact, Plaintiff

11  conceded that Defendant was entitled to repossess the Durango after the bankruptcy proceedings

12  had concluded.  Under the loan agreement, Plaintiff was obligated to take all necessary action to

13  provide Defendant with a perfected security interest and to comply with, facilitate, and otherwise

14  assist Defendant with perfecting its security interest.  It is certainly questionable whether leaving

15  the Durango in a parking lot 50 miles from his home unlocked, with keys inside, and without

16  identifying license plates was reasonable under the circumstances to facilitate the repossession of

17  the car.  Regardless, it is undisputed that Plaintiff used the car for full-time business purposes,

18  defaulted on the loan, and left the car unprotected at a parking lot.  The Court finds that leaving

19  the Durango in a parking lot unlocked, without license plates and with the keys inside, and then

20  subsequently buying back the car from X-Men Towing does not amount to protecting the vehicle

21  or keeping the property unencumbered.  Also, the loan agreement contained affirmative

22  obligations on the debtor to provide the bank with any notices, documents, financial statements,

23  reports, or other information regarding its collateral.  Although documents were sent by X-Men

24  Towing directly to Defendant (and improperly routed), the same documents regarding the

25  collateral were not sent by Plaintiff who had this affirmative obligation.  Plaintiff failed to provide

26  Defendant with notice of the lien sale, which potentially affected Defendant's ability to exercise

27  its remedies under the loan agreement.  The Court finds Plaintiff's conduct to amount to a material

28  breach of contract.  Accordingly, the Court GRANTS summary judgment as to Defendant's claim

United States District Court
Northern District of California

9

1   for breach of contract.

2   **H.      Defendant is Entitled to Judgment on its Counterclaim for Declaratory Judgment.**

3           In its second counterclaim, Defendant seeks a judgment declaring that (1) the loan

4   agreement remains effective pursuant to California Commercial Code section 9201; (2) Plaintiff is

5   not a buyer in the ordinary course under California Commercial Code section 1201(b)(9) because

6   he did not purchase the Durango in good faith and without knowledge that the sale was in

7   violation of Defendant's ownership rights or security interest in the Durango; (3) Defendant had a

8   continues to have a security interest in the Durango; and (4) Plaintiff must return the Durango to

9   Defendant and other facilitate the transfer of ownership to Defendant.

10          Although Plaintiff maintains that he waited the 30 days required by the lien sale and

11  thought Defendant failed to respond to the notice because it did not want the vehicle, the Court

12  finds that Plaintiff was not a buyer in good faith.  It was Plaintiff's contractual obligation

13  separately to inform Defendant of the pending lien sale.  Pursuant to the loan agreement, even

14  after default and bankruptcy, the secured party had the right to take possession of the collateral,

15  whether by judicial process or without.  Cal. Comm. Code § 9609.  The Court finds that the

16  undisputed facts establish that Plaintiff materially breached the loan agreement and, with respect

17  to the lien sale from X-Men Towing, Plaintiff was under s separate obligation to inform Defendant

18  of the sale and to allow the bank to perfect its interest in the collateral.  The undisputed facts

19  establish that the lien sale did not extinguish Defendant's security interest and this interest remains

20  enforceable against Plaintiff.  Cal. Comm. Code §§ 9320, 9201.  Accordingly, the Court GRANTS

21  summary judgment as to Defendant's counterclaim for declaratory relief.

22                                    **CONCLUSION**

23          For the foregoing reasons, the Court GRANTS Defendant's motion for summary

24  judgment.  A separate judgment shall issue and the Clerk is instructed to close the file.

25          **IT IS SO ORDERED.**

26          Dated:  March 31, 2023

27          _____

28          JEFFREY S. WHITE
            United States District Judge

            10

United States District Court
Northern District of California